UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICHAEL GORE,

    Plaintiff,

  v.

SUPERINTENDENT NEWLIN *et al.*,

    Defendants.

Case No. C05-5841FDB

REPORT AND RECOMMENDATION

**NOTED FOR:
January 19, 2007**

    This Civil Rights action has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. § 636(b)(1)(B). Before the court are motions for summary judgement filed by the two named defendants in this action, Physician's Assistant Rigg and Superintendent Newlin (Dkt. # 29 and 32).

    Plaintiff has not responded to the motions. Mail sent to plaintiff has been returned with no forwarding address (Dkt. # 31). Further, plaintiff did not provide answers to discovery and did not appear for his scheduled deposition (Dkt # 32, page 2 footnote 1). It appears this action has been abandoned.

REPORT AND RECOMMENDATION 1

FACTS

Plaintiff has not challenged defendant Rigg's statement of material facts and those facts are adopted by the court as follows:

Plaintiff Michael Gore was an inmate at the Kitsap County Jail, also known as the Kitsap County Corrections and Detention Center, between approximately August 16, 2005 and February 17, 2006. (Aff. of B. Rigg in support of Defendant Rigg's Motion for Summary Judgment, p. 1-2, para. 3) Pursuant to a contract with Kitsap County, the Kitsap County Health District, at all material times, provided medical services to inmates at the Corrections and Detentions Center. (Id., p. 1, para. 2) Defendant Brian Rigg is a physician's assistant employed by the Kitsap County Health District, and he provided medical services to Mr. Gore during Gore's incarceration. (Id., p. 1, para. 2)

Mr. Rigg saw Mr. Gore approximately 20 times for various medical conditions/issues. (Id., p. 2, para. 4) Mr. Gore is diabetic and, consequently, a great majority of Mr. Rigg's medical visits with Mr. Gore concerned blood sugar and medication management. (Id., p. 2, para. 5)

When inmates are booked into the Corrections and Detention Center, they are issued a jail uniform and jail footwear, and their personal clothing and shoes, and personal belongings, are held in Property. (Id., p. 2, para. 6) The standard "shoes" issued to jail inmates are tan colored, molded plastic sandals with a wide strap that passes over the top of the foot. (Id., p. 2, para. 7) If they wish, inmates can also purchase, in the Corrections Center commissary, blue canvas slip-on/loafers. (Id., p. 2, para. 7)

At some point during his incarceration, Mr. Gore asked Mr. Rigg that he be allowed to wear his personal street shoes instead of his plastic sandals or canvas slip-ons. (Id., p. 2, para. 8) Mr. Gore said his street shoes were "orthopedic" and that he needed them because of his diabetes. (Id., p. 2, para. 8)

Mr. Gore's street shoes were retrieved from Property, and Mr. Rigg examined them. (Id., p. 2, para. 9) They did not have any special cutouts, straps, or supports and appeared to Mr. Rigg to be ordinary, well-worn street shoes. (Id., p. 2, para. 9)

Although, to Mr. Rigg's eye, there did not appear to be anything "orthopedic" about Mr. Gore's street shoes, Mr. Gore said they had been prescribed by his outside physician, a Dr. Woods from the Multi-Family Care Clinic on 26th Avenue in Tacoma. (Id., p. 2, para. 10) Accordingly, Mr. Gore was asked to fill out a medical authorization/release form so jail healthcare personnel could contact Dr. Woods and discuss this issue with him/her. (Id., p. 2, para. 10) Mr. Gore filled out and signed the form, and it was faxed to Dr. Woods at Multi-family care. (Id., p. 3, para. 11) But the form was faxed back to the jail with the hand-written notation that Mr. Gore was "not our patient." (Id., p. 3, para. 11)

Based on his inspection of Mr. Gore's street shoes, and lack of verification from Dr. Woods, Mr. Rigg concluded there was nothing special or "orthopedic" about Mr. Gore's street shoes, and Mr. Gore's request that he be allowed to wear those shoes instead of his jail-issued footwear was denied. (Id., p. 3, para. 12)

During Mr. Gore's incarceration, he did not, to Mr. Rigg's judgment, have a

REPORT AND RECOMMENDATION 2

medical condition that would have been alleviated, in any way, by Mr. Gore's street shoes. (Id., p. 3, para. 13) Mr. Gore's feet were dry and calloused, and, on a number of occasions, he asked that his toenails be cut. Id. p. 3, para. 13) In addition, he did, occasionally, say his feet hurt. ( Id., p. 3, para. 13) However, in Mr. Rigg's judgment as a Physician's Assistant, Mr. Gore's feet did not present a serious medical condition or need. (Id., p. 3, para. 13) Moreover, in Mr. Rigg's judgment, there was nothing about Mr. Gore's street shoes that would have rendered them more appropriate, medically, than his jail issued footwear. (Id., p. 3, para. 13)

(Dkt. # 29, pages 1 to 3). Plaintiff filed a complaint, which read liberally, alleges a violation of his Eighth Amendment right to be free from cruel and unusual punishment. Plaintiff alleges deliberate indifference because he was not allowed to wear his street shoes while incarcerated. (Dkt. # 7).

## DISCUSSION

A.   The standard of review.

Pursuant to Fed. R. Civ. P. 56 (c), the court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1985).

There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). See also Fed. R. Civ. P. 56 (e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986); T. W. Elec. Service Inc. v. Pacific Electrical Contractors Association, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial, e.g. the

REPORT AND RECOMMENDATION 3

1  preponderance of the evidence in most civil cases. <u>Anderson</u>, 477 U.S. at 254; <u>T.W. Elec. Service Inc.</u>, 809 F.2d at 630.  The court must resolve any factual dispute or controversy in favor of the nonmoving party only when the facts specifically attested by the party contradicts facts specifically attested by the moving party. <u>Id</u>.

The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in hopes that evidence can be developed at trial to support the claim. <u>T.W. Elec. Service Inc.</u>, 809 F.2d at 630.(relying on <u>Anderson</u>, *supra*).  Conclusory, nonspecific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." <u>Lujan v. National Wildlife Federation</u>, 497 U.S. 871, 888-89 (1990).  It is with this standard in mind that the court considers these motions.

      B.    <u>Eighth Amendment medical claim</u>.

The government has an obligation to provide medical care for prisoners, and the Eighth Amendment proscribes deliberate indifference to their serious medical needs. <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976),  Such conduct is actionable under 42 U.S.C. § 1983. <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir. 1992).

In order to establish deliberate indifference there must first be a purposeful act or failure to act on the part of the defendant. <u>McGuckin</u>, at 1060.  A difference of opinion between a prisoner and medical authorities regarding proper medical treatment does not give rise to a section 1983 claim. <u>Franklin v. Oregon, State Welfare Div</u>., 662 F.2d 1337, 1344 (9th Cir. 1981).  Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights. <u>Hutchinson v. United States</u>, 838 F.2d 390, 394 (9th Cir. 1988). Second, a prisoner can make no claim for deliberate medical indifference unless the denial was harmful. <u>McGuckin</u>, at 1060; <u>Shapely v. Nevada Bd. of State Prison Comm'rs</u>, 766 F.2d 404, 407 (9th Cir. 1985).

Here, plaintiff and P.A. Rigg had a difference of opinion regarding what type of shoes plaintiff needed.  P.A. Rigg sought confirmation, from the person plaintiff said was his treating physician, that the shoes plaintiff was wearing at the time of his arrest were medically needed.  P.A. Rigg was informed plaintiff was not a patient of that physician (Dkt. # 29, pages 1 to 3).  Plaintiff was

REPORT AND RECOMMENDATION 4

incarcerated in the Kitsap County Corrections and Detention Facility from August of 2005 to February of 2006. Plaintiff has placed no evidence before the court to show his being forced to wear prison issued footwear caused him injury or that defendant Rigg was deliberately indifferent to his needs. Defendant Rigg is entitled to summary judgment as a matter of law.

        C.        <u>Personal participation and supervisory liability</u>.

Defendant Newlin is the superintendent of the Kitsap County Corrections and Detention Facility. He states in his declaration that health services to the facility are provided by a contract between the Health District and the County (Dkt. # 34). Defendant Newlin states he has no role in selection or supervision of medical personnel (Dkt. # 34).

A defendant cannot be held liable under 42 U.S.C. § 1983 solely on the basis of supervisory responsibility or position. <u>Monell v. New York City Dept. of Social Services</u>, 436 U.S. 658, 694 n.58 (1978). A theory of *respondeat superior* is not sufficient to state a claim under Section 1983. <u>Padway v. Palches</u>, 665 F.2d 965 (9th Cir. 1982). The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts and omissions are alleged to have caused a constitutional violation. <u>Leer v. Murphy</u>, 844 F.2d 628, 633 (9th Cir. 1988). Plaintiff has failed to place any evidence before the court to show how defendant Newlin is liable for any alleged violation of a constitutional duty owed to plaintiff. Defendant Newlin is entitled to summary judgment as a matter of law.

CONCLUSION

Plaintiff appears to have abandoned this action. He did not place any evidence before the court to support his claims and the defendants are entitled to summary judgment as a matter of law. Accordingly, the two motions for summary judgment should be **GRANTED** and this action should be **DISMISSED WITH PREJUDICE**. A proposed order accompanies this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal.

REPORT AND RECOMMENDATION 5

Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **January 19, 2007**, as noted in the caption.

DATED this 22nd day of December, 2006.

/S/ J. Kelley Arnold
J. Kelley Arnold
United States Magistrate Judge

REPORT AND RECOMMENDATION 6